UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AYMAN MAHDY, M.D. *et al.*, | : | Case No. 1:16-cv-845 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| MASON CITY SCHOOL DISTRICT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART
THE GANNETT DEFENDANTS' MOTION TO DISMISS (Doc. 14)**

This civil action is before the Court on Defendants' motion to dismiss (Doc. 14)[1] and the parties' responsive memoranda (Docs. 19, 24).[2]

### I.  FACTS <u>AS ALLEGED</u> BY THE PLAINTIFFS

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiffs; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Dr. Mahdy is an urologist employed by the University of Cincinnati. (Doc. 2 at ¶ 65). He is a native of Egypt, and a legal United States Resident. (*Id.* at ¶¶ 65, 66).

Dr. Mahdy's daughter, J.M., was at all times relevant to the Amended Complaint five years of age, and a student at the Mason Early Childhood Center ("MECC") in

---

[1] Moving Defendants are Defendants Gannett Co., Inc., Gannett GP Media, Inc. d/b/a The Cincinnati Enquirer/Cincinnati.com ("The Cincinnati Enquirer"), Peter Bhatia, Hannah Sparling, Amanda Rossmann, and Gannett Satellite Information Network, LLC d/b/a/ USA Today ("USA Today") (collectively "Gannett Defendants").

[2] Also pending before the Court is Defendants' motion to dismiss Plaintiffs' second amended complaint. (Doc. 23). Since the second amended complaint did not moot Defendants' original motion to dismiss, the motion (Doc. 23) is **DENIED** as duplicative.

Mason, Ohio. (Doc. 2 at ¶¶ 6, 9). J.M. is a U.S. citizen, and speaks both English and Arabic. (*Id.* at ¶¶ 67, 68).

Defendant Mason City School District ("MCSD") is "an independent public school\ district," in which the Mason Early Childhood Center falls. (Doc. 2 at ¶ 7). Defendant Gail Kist-Kline is MCSD's superintendent; Defendant Melissa Bly is the principal of MECC; Defendant Erin Bucher is MECC's assistant principal; and Defendant Michelle Hastings was a classroom teacher at MECC (collectively referred to as the "School Defendants").

Defendant Gannett Co., Inc. ("Gannett") is the parent company of Gannett GP Media, Inc., which publishes the Cincinnati Enquirer/Cincinnati.com, and Gannett Satellite Information Network, LLC, which publishes USA Today. Defendant Peter Bhatia is the editor of The Cincinnati Enquirer and Cincinnati.com; Defendant Hannah Sparling is a reporter for The Cincinnati Enquirer and Cincinnati.com, and Defendant "Amanda Rossman [sic]"[3] is a photographer for The Cincinnati Enquirer and Cincinnati.com.

On December 1, 2015, The Cincinnati Enquirer, through Cincinnati.com, published an article with the headline, "Arabic-speaking kids overwhelm Mason" (hereinafter "Article"). (Doc. 2 at ¶ 16). The article, which was based on interviews with Ms. Kist-Kline and Ms. Hastings, among others, described the alleged "financial burden" imposed on MCSD by a Cincinnati Children's Hospital Medical Center program known

---

[3] The proper spelling is "Amanda Rossmann."

2

as "Destination Excellence." (*Id.* at ¶ 19). The article stated that the Destination Excellence program draws seriously ill children and their families from all over the world, and that during their stay, the children of these Destination Excellence families enroll in MCSD. (*Id.*) The article explained that the additional enrollment of children from these Destination Excellence families, which included 51 Arabic-speaking children, had an associated cost of $522,000, according to Ms. Kist-Kline. (*Id.* at ¶¶ 19, 46). A print-version of the Article appeared the following day, December 2, 2015. It also appeared in USA Today. (*Id.* at ¶ 21).

At the center of Dr. Mahdy's lawsuit is the picture that accompanied the Article. The picture shows J.M. in her MECC classroom receiving instruction from a student teacher, with the caption: "[J.M.], a kindergartner in Michelle Hastings' class at Mason Early Childhood Center, works with a student teacher on a reading lesson. [J.M.'s] first language is Arabic." (Doc. 2 at ¶ 18). J.M. is not associated with the Destination Excellence program, and Dr. Mahdy is a Mason taxpayer. (*Id.* at ¶¶ 70-71).

Dr. Mahdy alleges that neither he nor his wife gave permission to anyone "to photograph J.M., to disclose her identity to the public, [or] to falsely associate [J.M.]" with the Destination Excellence. (Doc. 2 at ¶ 72). He alleges that he had to remove J.M. from MECC due to the "wave of Islamophobia that is currently sweeping across our country," and because his family "were so distressed over the prejudice and discriminatory treatment expressed against Arabic-speaking students." (*Id.* at ¶¶ 24, 90). He further alleges that the School Defendants and Gannett Defendants acted jointly to

3

have the Article with J.M.'s picture published. (*Id.* at ¶¶ 106-113). Dr. Mahdy contends that the publication of J.M.'s photograph constituted a violation of his daughter's federal civil rights (Counts I and II), and portrayed them in a false light (Count III). He also seeks injunctive and declaratory relief based on the rights asserted in Counts II and III (Count IV).

The Gannett Defendants move this Court for an order: (1) dismissing Count II and Count IV pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) dismissing Counts III and IV pursuant to Federal Rule of Civil Procedure 12(b)(1) or in the alternative, 28 U.S.C. Section 1367(c), without prejudice.

## II.  STANDARD OF REVIEW

### A.  Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555).

4

In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. (*citing* Fed. Rule Civ. P. 8(a)(2)).

### B. Motion to Dismiss Pursuant to Rule 12(b)(1)

"Whether subject matter jurisdiction exists is a threshold determination the Court must make before proceeding further." *Ggnsc Stanford, LLC v. Gilliam*, No. 5:16cv4, 2016 U.S. Dist. LEXIS 120365, at *4 (E.D. Ky. Sept. 7, 2016) (*citing United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993)). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its fact, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in

which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Hutchins v. Laferte*, No. 1:15cv32, 2016 U.S. Dist. LEXIS 113843, at *8-9 (W.D. Ky. Aug. 25, 2016).

Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion …." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991).

Motions under Rule 12(b)(1) generally come in two varieties, either facial or factual attacks on the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on the subject matter jurisdiction alleged by a complaint merely questions the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, a similar safeguard employed under Rule 12(b)(6) motions to dismiss. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 19990). As a result, this Court may weigh the evidence and resolve any factual disputes when adjudicating such a jurisdictional challenge. *Ritchie*, 15 F.3d at 598.

### III. ANALYSIS

#### A. Section 1983 Claim

To state a claim under Section 1983, a plaintiff must prove: "1) the deprivation of a right secured by the Constitution and the laws of the United States and 2) the

6

deprivation was caused by a person acting under color of state law." *Simescu v. Emmet Cty. Dep't of Soc. Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).

Dr. Mahdy alleges that the Gannett Defendants, acting in concert with the School Defendants, deprived J.M. of her constitutional rights to the free exercise of religion under the First Amendment and to equal protection of the law under the Fourteenth Amendment. (Doc. 2 at ¶¶ 93-118). Dr. Mahdy alleges that the deprivation occurred when The Cincinnati Enquirer published the Article with J.M.'s photograph on December 1, 2015. (*Id.* at ¶¶ 110-118).

Dr. Mahdy concedes that the Gannett Defendants are private actors (Doc. 2 at ¶ 109) and, therefore, to show that these Defendants acted under color of state law, Dr. Mahdy must prove that the Gannett Defendants' publication of the Article nevertheless constituted "state action." *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007). This requires a showing that the Gannett Defendants' act of publishing the Article was "fairly attributable to the State." *Id.* The "fair attribution" analysis requires a "two-part approach." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible…Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.*

7

### *1. State Action*

A vast majority of courts have held that a newspaper, its editors, and journalists cannot be held liable under Section 1983 for publishing the news. *See, e.g., Davis v. Janczewski*, 22 F. App'x 533, 534 (6th Cir. 2001) (holding that a journalist who reported allegedly defamatory information about an inmate could not "be said to have been acting under color of state law in reporting for a local newspaper"). Plaintiffs argue that this misses the entire point of the lawsuit—that is, a 5-year old is not the news. Specifically, J.M. and her family had nothing to do with the story that was reported and associating her and her family with that story was wrong.[4]

However, since Plaintiffs have not established any state action by the Gannett Defendants, the Section 1983 claim fails as a matter of law.

---

[4] In support of their argument, Plaintiffs cite *M.G. v. Time Warner, Inc.*, 107 Cal. Rptr. 2d 504 (Cal. App. 2001), where Sports Illustrated and an HBO television program, Real Sports, used the 1997 team photograph of a Little League team to illustrate stories about adult coaches who sexually molest youths playing team sports. The plaintiffs, all of whom appeared in the photograph, were players or coaches on the team. The team's manager pleaded guilty to molesting five children he had coached in Little League. Four of the players depicted in the photograph who had been molested had never been publically identified prior to the defendants' publication of the photograph. Two of the coaches in the photograph had never molested any children. The other four players depicted in the photograph had never been molested by any coach at all. None of the plaintiffs had given permission to use their photograph or to publicize their identities. The players and coaches depicted in the photograph sued for invasion of privacy and infliction of emotional distress. The court found that there was no nexus between the "newsworthy" story of coaches molesting youths, and the photographic identification of the youths who had never been molested and the coaches who had never molested and therefore, use of the photograph was an invasion of the players' and coaches' privacy. However, this state court decision is inapplicable, because it does not involve a Section 1983 claim, but rather a state-law tort claim. Plaintiffs fail to cite any case law where a private plaintiff has overcome the protections the Constitution affords private individuals against liability for engaging in speech-related activities.

8

### *2. State Actors*

In cases alleging cooperation or concerted action, a plaintiff may hold a private actor liable where: "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis*, 489 F.3d at 292. The Sixth Circuit has cautioned that 42 U.S.C. Section 1983 conspiracy claims "must be pled with some degree of specificity," and that "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim .…" *Webb v. United States*, 789 F.3d 647, 670 (6th Cir. 2015).

Plaintiffs argue that they have sufficiently alleged joint, cooperative, and conspiratorial action by the School Defendants and the Gannett Defendants to survive a motion to dismiss under Rule 12(b)(6). (Doc. 2 at ¶¶ 81-87, 99-101, 104, 106-114). Specifically, Plaintiffs allege that: (1) a single plan existed to single out the Arabic-speaking students from among the general student body and the more than 600 ESL students for public scrutiny and criticism; and (2) that the Defendants shared a common objective to single out, and thus discriminate against, the Arabic-speaking students, who are presumably also Muslim, and to thus deprive them of their constitutional rights to the free exercise of religion and equal protection.

Plaintiffs' threadbare recitations of joint action between the School and Gannett Defendants fail to allege that they conspired with the objective to deprive J.M. of her constitutional rights to free exercise of her religion and equal protection of the law. (Doc. 2 at ¶¶ 113-14, 116). Specifically, the only objective "facts" Dr. Mahdy alleges

9

regarding the interactions between the School and Gannett Defendants are the following: (1) reporters Hannah Sparling and Amada Rossmann were permitted access to a MECC classroom by a Mason school official; (2) Ms. Sparling interviewed two Mason school officials, Superintendent Gail Kist-Kline and teacher Michelle Hastings, and the information provided by those individuals was included in Ms. Sparling's Article; and (3) Ms. Rossmann photographed Dr. Mahdy's daughter in the classroom, with the permission of Mason school officials and that photograph was included in Ms. Sparling's Article. These facts do not allege that the Gannett Defendants engaged in a conspiracy with the School Defendants.

Accordingly, the Section 1983 claim fails as a matter of law as against the Gannett Defendants.

### B. Subject-Matter Jurisdiction

Since the Court is dismissing the Section 1983 claim against the Gannett Defendants, the only remaining claims are the federal claims against the School Defendants and the state law false light invasion of privacy claim against the Gannett Defendants and Defendants Kist-Kline, Bly, and Hastings. Accordingly, Defendants move the Court to dismiss Counts III (false light) and IV (injunctive and declaratory relief based on the false light claim), as against the Gannett Defendants pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, 28 U.S.C. Section 1367(c).

Plaintiffs allege that this Court has jurisdiction over their state law false light invasion of privacy claims pursuant to the supplemental jurisdiction statute, 28 U.S.C. Section 1367(a). That statute provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

To satisfy Section 1367(a), Plaintiffs must demonstrate that the Amended Complaint: (1) pleads a claim over which this Court has original jurisdiction; and (2) that the state law claim is "so related" to the claim(s) that confer original jurisdiction that the state law claim "form[s] part of the same case or controversy under Article III." Section 1367(c) gives federal courts the discretion to decline supplemental jurisdiction over a state law claim when "the district court has dismissed all claims over which it has original jurisdiction" or "the claim raises a novel or complex issue of state law." 28 U.S.C. § 1367(c)(1)(3). "When considering to exercise supplemental, or pendent, jurisdiction over state law claims, the Court should consider the interests of judicial economy … and balance those interests against needlessly deciding state law issues. *Dickson v. Gen. Elec. Co.*, No. 4:15cv353, 2015 U.S. Dist. LEXIS 44703, at *2 (N.D. Ohio Apr. 6,

11

2015).[5]

Plaintiffs plead two federal claims against the School Defendants. First, under Title VI of the Civil Rights Act of 1964, Plaintiffs claim that the School Defendants discriminated against J.M. on the basis of national origin by "[f]ocusing on 51 Arabic-speaking students" and "[p]resenting J.M. to the media, and encouraging or allowing the media to use J.M.'s name and photograph." (Doc. 2 at ¶¶ 84-85). Dr. Mahdy also claims that the School Defendants violated Section 1983 by permitting the publication of J.M.'s photograph in violation of the First and Fourteenth Amendments. (*Id.* at ¶¶ 102-103).

Plaintiffs' state law claim is for false light invasion of privacy and for injunctive and declaratory relief based on that claim. (Doc. 2 at ¶¶ 119-134). The Supreme Court of Ohio has defined the tort as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (Ohio 2007). For purposes of Section 1367(a) "[c]laims form part of the same case or controversy when they derive from a common nucleus of operative fact." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004).

---

[5] *See also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the ligation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.").

The Court finds that the facts supporting the federal claims are inextricably tied to the facts supporting the state law claim for false light invasion of privacy. Specifically, Defendants identified J.M. by name, photographed her without the knowledge or consent of her parents, and then used her name and image to illustrate an allegedly discriminatory article about Arabic-speaking students and their families taking advantage of lax visa laws and saddling the School District with burdensome expenses, none of which have anything to do with J.M and her family. Requiring the parties to litigate against the Gannett Defendants and the School Defendants in two separate courts for claims arising out of the same conduct would be inefficient and potentially unfair to the parties.

Accordingly, the Gannett Defendants' motion to dismiss Counts III and IV for lack of subject-matter jurisdiction is denied.

## IV. CONCLUSION

For these reasons, the Gannett Defendants' motion to dismiss (Doc. 14) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Counts II, and to the extent based on federal law, Count IV are **DISMISSED** as against the Gannett Defendants, but Counts III, and to the extent based on state law, Count IV survive.

**IT IS SO ORDERED**.

Date: __1/18/17__

_Timothy S. Black_
Timothy S. Black
United States District Judge